IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| OLENDORFF CARRIERS GMBH & CO., KG, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIV. CASE NO. 2:12-CV-00074 |
| GRAND CHINA SHIPPING (HONG KONG) CO., LTD., GRAND CHINA LOGISTICS HOLDING (GROUP) COMPANY LTD., OFFSHORE HEAVY TRANSPORT AS, OHT EAGLE AS, and HNA GROUP CO. LTD., | § § § § § § § § § | ADMIRALTY FED. R. CIV. P. 9(h) |
| Defendants. | § | |

## ORDER ADOPTING MEMORANDUM AND RECOMMENDATION

Before the Court is Defendants Offshore Heavy Transport AS and OHT Eagle AS's Amended Motion to Dismiss and to Vacate Attachment. (D.E. 56, Sealed Doc.) On March 28, 2013, Magistrate Judge Brian L. Owsley issued a memorandum and recommendation to dismiss this action and vacate the attachment. (D.E. 63.) Plaintiff filed objections (D.E. 65) and is entitled to a de novo disposition of the objected-to portions of the memorandum and recommendation. FED. R. CIV. P. 72(b); 28 U.S.C. § 636(b)(1); *Koetting v. Thompson*, 995 F.2d 37, 40 (5th Cir. 1993). For the reasons set forth below, Plaintiff's objections are overruled, and Defendants' Amended Motion to Dismiss and to Vacate Attachment (D.E. 56) is GRANTED.

### BACKGROUND

Plaintiff Oldendorff Carriers GMBH & Co., KG initiated this action to attach the vessel M/V Eagle pursuant to Rule E(4)(f) of the Supplemental Rules for Admiralty or Maritime

Claims and Asset Forfeiture Actions to obtain security for an arbitration proceeding pending in London against Defendant Grand China Shipping (Hong Kong) Co., Ltd. (**GCS**). (D.E. 1.) In the arbitration proceeding, Plaintiff seeks to recover losses stemming from Defendant GCS's alleged repudiatory breach of a charter party agreement for the vessel M/V K Daphne. Plaintiff alleges that Defendants Grand China Logistics Holding (Group) Company Limited (**GCL**), Offshore Heavy Transport AS (**OHT**), OHT Eagle AS (**OHT Eagle**), HNA Group Co. Ltd. (**HNA**), and GCS are alter egos of each other and in actual fact constitute a single business enterprise; as such, Plaintiff argues that they may be held jointly liable for the damages sustained by Plaintiff as a result of the breach. (D.E. 51 ¶¶ 26–83.)

On March 7, 2012, Plaintiff submitted a motion to seize the specialized heavy lift vessel M/V Eagle, which was owned by Defendant OHT Eagle and then present within the territorial jurisdiction of this Court. (D.E. 3.) The following day, the Magistrate Judge held an evidentiary hearing on the seizure, and finding reasonable grounds for attachment, issued an Order for the Issuance of Maritime Attachment and Garnishment. (D.E. 7.) The Magistrate Judge set security for the release of the vessel at $3,470,551.95 to be paid by OHT Eagle. (D.E. 13.) OHT Eagle provided a Special Release Bond (D.E. 16), and Plaintiff consented to the release of the vessel (D.E. 17).

Defendants OHT and OHT Eagle filed a motion to dismiss and vacate attachment on May 20, 2013. (D.E. 27.) After reviewing the motion, the Court ordered the parties to engage in jurisdictional discovery, including the bases for Plaintiff's veil-piercing theories. (D.E. 48.) The Court additionally granted Plaintiff leave to file an amended complaint. (*Id.*) Plaintiff filed an Amended and Supplemental Verified Complaint (D.E. 51), and Defendants OHT and OHT Eagle filed an Amended Motion to Dismiss and to Vacate Attachment (D.E. 56). The Magistrate Judge

then issued a Memorandum and Recommendation to Grant Defendants Amended Motion to Dismiss and to Vacate Attachment. (D.E. 63.)

Plaintiff raises three objections to the memorandum and recommendation. (D.E. 65.) First, Plaintiff objects that the Magistrate Judge failed to follow the Court's precedent established in its recent *White Rosebay* decision.  Second, Plaintiff objects that the Magistrate Judge erroneously applied a preponderance of the evidence standard.  And third, Plaintiff objects that the Magistrate Judge improperly applied the reverse corporate veil piercing remedy in assessing the formal adequacy of the attachment.  Each of these objections is considered in detail below.

## ANALYSIS

### A. Post-Jurisdictional Discovery Standard

In his memorandum and recommendation, the Magistrate Judge concludes that "Plaintiff can only survive a Rule E motion to vacate by showing by a preponderance of evidence that it is entitled to attachment." (D.E. 63 at 5.)  Plaintiff argues that the Magistrate Judge should have applied a probable cause standard. (D.E. 65 at 10.)

Several district courts, including courts for the Southern District of Texas, have applied a preponderance of the evidence standard to Rule E motions to vacate after providing the party asserting jurisdiction an opportunity for discovery and an evidentiary hearing. *See Hawknet Ltd. v. Overseas Shipping Agencies*, No. 07 Civ. 5912(NRB), 2009 WL 1309854, at *2 (S.D.N.Y. May 6, 2009) ("after an evidentiary hearing, post-discovery, the party asserting jurisdiction must demonstrate it by a preponderance of the evidence"); *Vinmar Int'l Ltd. v. M/T Clipper Makishio*, No. H-09-3829, 2009 WL 6567104, at *1 (S.D. Tex. Dec. 9, 2009); *Seatrade Group N.V. v. 6,785.5 Tons of Cement*, No. H-05-2771, 2005 WL 3878026, at *2 (S.D. Tex. Dec. 6, 2005).

Preponderance of the evidence is the level of proof required for Plaintiff to carry the day at trial. Thus, at some point, Plaintiff must prove the jurisdictional facts of its case by a preponderance of the evidence, either at the Rule E hearing or at trial. *Credit Lyonnais Securities (USA), Inc. v. Alcantara*, 183 F.3d 151, 154 (5th Cir. 1999). While a plaintiff initially need only make a *prima facie* showing that a defendant is amenable to suit, *Nuovo Pignone, SpA v. Storman Asia M/V*, 310 F.3d 374, 378 (5th Cir. 2002), when a district court permits jurisdictional discovery and conducts a full evidentiary hearing on the issue of jurisdiction, the plaintiff must then prove its jurisdictional facts by a preponderance of the evidence. *Kwik-Kopy Corp. v. Byers*, 37 Fed. App'x 90 (5th Cir. 2002); *Felch v. Transportes Lar-Mex SA DE CV*, 92 F.3d 320, 326 (5th Cir. 1996); *DeMelo v. Toche Marine, Inc.*, 711 F.2d 1260, 1271 n. 12 (5th Cir. 1983); *Maersk, Inc. v. Neewra, Inc.*, 687 F. Supp. 2d 300, 336 (S.D.N.Y. 2009).

In the case at hand, after the Court ordered the parties to engage in jurisdictional discovery, the Magistrate Judge held an evidentiary hearing on the issue of attachment pursuant to Rule E(4)(f). (*See* Order for Discovery, D.E. 48; Hrg. Tr., D.E. 68.) Plaintiff had ample time to conduct discovery, there were no requests made to extend the time for discovery, and the Magistrate Judge did not limit the parties in the evidence they could present at the hearing. Plaintiff's counsel argued that they were unable to depose a key witness, the Chairman of GCL and OHT, Jia Hongxiang, despite a subpoena requiring him to appear. (*See* Second Evidentiary Hrg. Tr. 33:23–38:22, D.E. 68; Gaitas Decl. ¶ 4, D.E. 58-1 at 2; Subpoena to Testify, D.E. 58-1 at 131–37.) However, Plaintiff failed to file a motion seeking additional discovery or a motion to compel. (Hrg. Tr. 37:4–21.) The Court therefore finds that the Magistrate Judge's conclusion that Plaintiff was required to prove its jurisdictional facts by a preponderance of the evidence was not erroneous. Plaintiff's objection is OVERRULED.

**B.     Court's *White Rosebay* Opinion**

Plaintiff further argues that the Magistrate Judge's memorandum and recommendation is erroneous because he failed to follow this Court's precedent established in *White Rosebay Shipping S.A. v. HNA Group Co., Ltd.*, No. 2:12-cv-00096, 2013 WL 44104 (S.D. Tex. Feb. 5, 2013). (D.E. 65 at 7–8.)   However, as stated in the Court's *White Rosebay* opinion, the defendants in that case did not request a post-attachment hearing, and there was no evidence presented for the Court's consideration. *Id*. at *3.  In *White Rosebay*, the Court specifically limited its analysis to the allegations of the complaint, and based on the allegations of the complaint, the Court concluded that the plaintiff pled sufficient facts to maintain the maritime attachment. *Id*. at *5. The present case is procedurally different from *White Rosebay*.  Here, the Court permitted jurisdictional discovery, and the Magistrate Judge held two separate evidentiary hearings on the issue of attachment.  Plaintiff's objection is therefore OVERRULED.

**C.     Insufficient Grounds to Pierce the Corporate Veil**

Finally, Plaintiff asserts that the Magistrate Judge improperly applied the reverse corporate veil piercing remedy in assessing the formal adequacy of the attachment, focusing solely on corporate formalities and failing to take into account the totality of the circumstances. (D.E. 65 at 11–16.)  Plaintiff argues that the evidence shows that HNA and GCL dominate and control their undercapitalized subsidiaries and comingle assets between themselves in order to shield their assets from creditors, and furthermore, that GCL and Arne Blystad, the majority and minority shareholders of OHT, engaged in a series of orchestrated maneuvers that resulted in a gratuitous transfer of $150 million in assets to Blystad designed to evade creditors. *Id*.

With respect to Plaintiff's allegations that HNA and GCL dominate and control their subsidiaries and comingle their assets, discovery produced little, if any, evidence to support these

allegations. Plaintiff cites to the PowerPoint presentation and press release in its original complaint. (Ex. 6 to Amend. Compl., D.E. 51-2 at 1–35; Ex. A to Boxall Decl., D.E. 51-1 at 58.) Plaintiff also cites to e-mails indicating that GCL settled claims or provided security to its subsidiaries for payment of such claims in order to assist the subsidiaries in getting their vessels released. (D.E. 51-3 at 30–34.) Furthermore, Plaintiff points to contracts in which GCL served as a joint lessee with its subsidiaries. (D.E. 51-3 at 1–4.) OHT was not a party to any of these contracts or e-mails. In the end, the evidence does not demonstrate the kind of domination and control of OHT by its parent, nor the kind of improper comingling of assets that Plaintiff alleges in the Amended Complaint. (*See, e.g.*, Am. Compl., D.E. 51 ¶ 41, alleging that companies' "ownership and control is so intertwined and fused that they are distinct from one another only in a pro forma manner.")

Plaintiff additionally presented evidence of OHT's actions post-seizure, arguing that Defendants' actions were designed to thwart the claims of creditors. (*See* Am. Compl., D.E. 51 ¶¶ 75, 81, alleging that Defendants' actions amounted to "deliberate and planned manipulation, complete control and domination of [OHT], that left it a diminished, virtually empty shell company, stripped of its assets.") After the seizure of the M/V Eagle and other vessels as security for the unpaid debts and obligations of HNA, GCL, and GCS, OHT's Board of Directors realized that these seizures were impacting its business and would make it difficult for the company to obtain financing. (*See* Board of Directors minutes, May 4, 2012, D.E. 51-5 at 8–12; May 11, 2012 Letter from OHT CEO Jon Syvertsen, D.E. 58-1 at 139–41.) To address the situation, OHT's Board of Directors looked into refinancing its $225 million Term Loan Facility that it had with Credit Agricole Corporate and Investment Bank (Credit Agricole). (Blystad Tr. 40:14–44:14.) Additionally, OHT considered a shareholder restructuring in which Songa

(Blystad's company and the minority shareholder of OHT) would increase its ownership from 40% to 70% in exchange for forfeiting some of the value of Songa's approximate $100 million put option. (Blystad Tr. 45:11–50:20, 57:4–25.) It was thought that a restructuring and reduction of GCL's interest in the company would enable OHT to more easily obtain financing; however, the deal never materialized.

As default came nearer, Credit Agricole offered an extension on its loan in return for enhanced security in the form of a pledge by OHT to Credit Agricole of all the shares for the company's subsidiaries. (D.E. 62-1.) The OHT subsidiaries owned the heavy lift vessels which OHT leased and operated. Under the agreement, Credit Agricole would take ownership of the subsidiaries and their vessels in the event of default. (Pledge Agreement, D.E. 51-5 at 14–24.) With no alternative financing available, and OHT facing immediate foreclosure and a loss of its vessels, OHT's Board of Directors agreed to the terms of the offer. (*See* Board of Directors minutes, May 4, 2012, D.E. 51-5 at 8–12.) Despite the extension, OHT soon defaulted on its Term Loan Agreement, and Credit Agricole foreclosed, taking ownership of the vessels and subsidiaries. (Blystad Tr. 55:11–20.) Another company owned by Blystad, named Albatross, then purchased all the shares of OHT's subsidiaries from Credit Agricole for $10 million. (Share Purchase Agreement, D.E. 51-5 at 26–35; Blystad Tr. 71:9–13.) Plaintiff argues that this transaction constituted a fraudulent scheme orchestrated by HNA and GCL to shift assets away from the parent companies and avoid their creditors; however, there is no evidence to support this conclusion in the record.

Undoubtedly, the transaction resulted in a windfall for Albatross and Blystad. (D.E. 58 at 20–21.) Yet, there is no evidence that HNA, GCL, or any of their subsidiaries had an interest in Albatross, that they controlled Albatross, that they financed Albatross, that they benefited

from the purchase of the subsidiaries' shares by Albatross, or that Albatross was in any way acting in the interest of HNA, GCL, or their subsidiaries. To the contrary, the evidence demonstrates that Albatross, Songa, and Blystad operated independently of Defendants, and that the stock purchase was an arm's length transaction. Indeed, Blystad and Songa recently commenced arbitration proceedings against GCL based on GCL's failure to honor Songa's put option. (D.E. 56-2 at 131–32; Blystad Tr. 72:16–73:9.) Thus, considering the record before it, the Court finds that Plaintiff failed to demonstrate by a preponderance of the evidence circumstances warranting the reverse-piercing of OHT's corporate veil.

Moreover, the Court finds that, even applying a probable cause standard, Plaintiff failed to demonstrate reasonable grounds for reverse-piercing OHT's corporate veil. Probable cause is less than a preponderance of the evidence; and it has been described as a practical, common sense determination whether, given the totality of the circumstances, there is a "fair probability" that a claim is valid. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Rule E(4)(f) permits the Court to look beyond the complaint, and the burden is on Plaintiff to demonstrate through its allegations and evidence a prima facie admiralty claim. *See Naftomar Shipping and Trading Co. v. KMA Int'l S.A.*, No. V-11-2, 2011 WL 888951, at *2–3 (S.D. Tex. Mar. 10, 2011) (Rainey, J.); *Maersk, Inc. v. Neewra, Inc.*, 443 F. Supp. 2d 519, 527 (S.D.N.Y. 2006) (concluding that court "may consider any allegations or evidence offered in the parties' papers or at the post-attachment hearing"); *Linea Navira de Cabotaje, C.A. v. Mar Caribe de Navegacion, C.A.*, 169 F. Supp. 2d 1341, 1358 (M.D. Fla. 2001) ("Court has the discretion to consider additional evidence at the post-attachment hearing"); *A. Coker & Co., Ltd. v. Nat'l Shipping Agency Corp.*, 1999 WL 311941, at *1 (E.D. La. May 17, 1999); *Newport News Shipbuilding and Dry Dock Co. v. S.S. Independence*, 872 F. Supp. 262, 265 (E.D. Va. 1994).

Plaintiff's primary argument in favor of continuing the vessel's seizure is the foreclosure by Credit Agricole and subsequent purchase of the OHT subsidiaries by Albatross. Plaintiff argues that the "yield of discovery" on this issue factually bears out Plaintiff's allegations with regard to reverse-piercing the corporate veil of OHT. (D.E. 65 at 5.) The Court disagrees. The evidence simply does not bear out Plaintiff's allegations of control, domination, and asset-shifting. Furthermore, to pierce the corporate veil, there must be some evidence of an abuse of the corporate form to commit a fraud or injustice. *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 447 F.3d 411, (5th Cir. 2006). There is no evidence that Albatross's purchase of the OHT subsidiaries was done to benefit Defendants; rather, the common sense determination that the Court draws from the evidence is that Blystad recognized a good business deal and acted in his own best interests. Nothing in Blystad's 120-page deposition transcript or elsewhere in the record demonstrates that an alter ego relationship or fraudulent scheme to hide assets existed between Blystad and Defendants. Accordingly, Plaintiff's objection that the Magistrate Judge improperly applied the reverse corporate veil-piercing remedy is OVERRULED.

## CONCLUSION

For the reasons set forth above, the Court adopts the Magistrate Judge's memorandum and recommendation. Defendants OHT and OHT Eagle's Amended Motion to Dismiss and Vacate Attachment (D.E. 56) is GRANTED.

ORDERED this 30th day of July 2013.

**NELVA GONZALES RAMOS**
**UNITED STATES DISTRICT JUDGE**